## VIRGINIA:

*In the Court of Appeals of Virginia on* **Tuesday** *the* **4th** *day of* **June, 2024**.

Ted Anthony Jennings, Jr.,                                                                      Appellant,

  against           Record No. 1407-22-3
                      Circuit Court Nos. CR21000464-00 and CR21000464-01

Commonwealth of Virginia,                                                                      Appellee.

Upon a Petition for Rehearing En Banc

Before the Full Court

On May 21, 2024, the appellant, by counsel, filed a petition requesting that the Court set aside the judgment rendered on May 7, 2024, and grant a rehearing en banc on the issue(s) raised in the petition.

On consideration whereof and pursuant to Rule 5A:35 of the Rules of the Supreme Court of Virginia, the Court grants the petition for rehearing en banc and reinstates the appeal of those issues on the docket. The Court stays the mandate previously entered in this case pending the Court's en banc decision.

The parties must file briefs in compliance with the schedule set forth in Rule 5A:35(b).

A Copy,

Teste:

A. John Vollino, Clerk

By:    *original order signed by a deputy clerk of the Court of Appeals of Virginia at the direction of the Court*

Deputy Clerk

COURT OF APPEALS OF VIRGINIA

Present:   Judges Ortiz, Lorish and Senior Judge Petty
Argued at Lexington, Virginia


TED ANTHONY JENNINGS, JR.

                                  MEMORANDUM OPINION[*] BY
v.       Record No. 1407-22-3             JUDGE WILLIAM G. PETTY
                                          MAY 7, 2024
COMMONWEALTH OF VIRGINIA

FROM THE CIRCUIT COURT OF THE CITY OF LYNCHBURG
F. Patrick Yeats, Judge

Christopher T. Holinger (Davis Law, PLC, on briefs), for appellant.

Stephen J. Sovinsky, Assistant Attorney General (Jason S. Miyares, Attorney General, on brief), for appellee.


Following a bench trial, the Circuit Court of the City of Lynchburg convicted Ted Anthony

Jennings, Jr. of possessing a firearm within ten years of him being adjudicated delinquent of a

non-violent felony offense in violation of Code § 18.2-308.2. On appeal, Jennings contends that the

trial court erred in sentencing him to a two-year period of mandatory incarceration. For the

following reasons, we affirm.

BACKGROUND

On appeal, we review the evidence "in the 'light most favorable' to the Commonwealth, the

prevailing party in the trial court." *Hammer v. Commonwealth*, 74 Va. App. 225, 231 (2022)

(quoting *Commonwealth v. Cady*, 300 Va. 325, 329 (2021)). Doing so requires us to "discard the

evidence of the accused in conflict with that of the Commonwealth, and regard as true all the

---

[*] This opinion is not designated for publication. *See* Code § 17.1-413(A).

credible evidence favorable to the Commonwealth and all fair inferences to be drawn therefrom."
*Cady*, 300 Va. at 329 (quoting *Commonwealth v. Perkins*, 295 Va. 323, 324 (2018)).

On February 16, 2011, Jennings was adjudicated delinquent of one felony count of receiving stolen property, committed when he was 17 years old. On January 12, 2021, Lynchburg Police Officer Glerum stopped Jennings for using a cell phone while driving. During the stop, Jennings told Glerum that he had a firearm in his car. Glerum seized the firearm and arrested Jennings. He later obtained warrants charging Jennings for carrying a concealed weapon and being a felon in possession of a firearm less than ten years after a felony adjudication.[1]

At trial, the court received evidence of Jennings's felony adjudication, and Glerum's testimony recounting the traffic stop. Jennings testified that he was unaware of his status as a felon and recounted a 2017 offense for which he was convicted of carrying a concealed weapon, but not of being a felon in possession of a firearm. The trial court convicted Jennings and sentenced him to a total of 5 years and 12 months' incarceration with all but 2 years suspended. At sentencing, the trial court stated that it "was not going to impose any more time than the mandatory minimum" and noted that its "hands [were] really tied with respect to the sentencing" because of the mandatory minimum that it could not "deviate below."

Jennings subsequently moved to set aside the sentence. He contended that he had reasonably believed that he was entitled to carry a firearm.[2] He further argued that the mandatory minimum sentence should not apply because the mandatory sentencing language of Code § 18.2-308.2 specifies that the triggering event for the mandatory sentence is to be

---

[1] Jennings does not challenge on appeal his conviction for carrying a concealed weapon.

[2] Jennings asserted that he had been found with a firearm on several prior occasions but was never charged with a violation of Code § 18.2-308.2. This argument was not raised at trial.

"convicted" of a felony, not "adjudicated delinquent." After oral argument,[3] the trial court took the motions under advisement before ultimately denying them. The trial court granted Jennings's motion to remain on bond pending his appeal.

ANALYSIS

Code § 18.2-308.2(A) states, in relevant part, that

> [i]t shall be unlawful for . . . any person under the age of 29 who was adjudicated delinquent as a juvenile 14 years of age or older at the time of the offense of a delinquent act which would be a felony if committed by an adult . . . to knowingly and intentionally possess or transport and firearm . . . .

Further, "any person who violates this section by knowingly and intentionally possessing or transporting any firearm and who was previously convicted of any other felony within the prior [ten] years shall be sentenced to a mandatory minimum term of imprisonment of two years." *Id.* At the time of the offense, Jennings was 28 years old, and his juvenile adjudication had occurred 9 years, 10 months, and 27 days earlier. These time frames fall squarely within the statutory proscription.

Jennings argues that because the mandatory minimum portion of the statute refers only to convictions, it does not apply to those who were adjudicated delinquent as a juvenile. Therefore, he continues, because his predicate offense was an adjudication, the mandatory minimum sentence requirement in the statute did not apply. Rather, he argues, the trial court should have sentenced him for a Class 6 felony that was not subject to a mandatory minimum period of incarceration. We disagree.

Our decision in *Carter v. Commonwealth*, 38 Va. App. 116 (2002), is dispositive. Carter, adjudicated delinquent of a violent felony as defined by Code § 17.1-205, argued "that the mandatory sentencing provision of Code § 18.2-308.2 . . . was applicable only to an accused

---

[3] At argument, Jennings expanded his request to include a motion for a new trial.

'previously *convicted* of a violent felony,' not 'a [prior] juvenile *adjudication*.'" *Id.* at 121 (second alteration in original). Rejecting that argument, we found that the statute is intended "to protect the public from the threat of dangerously armed felons." *Id.* at 125. To accomplish that purpose, the statutory proscription expressly includes "all persons previously 'found guilty,' while juveniles, of a 'delinquent act,' deemed felonious." *Id.*

We explained that the "[s]ubsequent reference in Code § 18.2-308.2(A) to 'conviction or adjudication' simply recognizes terms that sometimes differentiate determinations of guilt in juvenile and adult prosecutions. Thus, the inclusive language, '*any person*,' which appears in the punishment provisions of the statute, clearly embraces anyone found in violation of the prohibition." *Id.* In other words, the statutory language "promotes inclusion, not exclusion." *Id.* The fact that Jennings's predicate offense was non-violent does not alter our analysis. We note that *Carter* was not limited to "violent" offenses; it holds that adjudications and convictions are synonymous for sentencing under Code § 18.2-308.2.

Jennings concedes that our case law is adverse to his arguments, but contends that *Carter* was wrongly decided. However, that is not an argument that this panel may address. The interpanel-accord doctrine provides that a decision of a prior panel of this Court "'becomes a predicate for application of the doctrine of stare decisis' and cannot be overruled except by the Court of Appeals sitting en banc[4] or by the Virginia Supreme Court." *Butcher v. Commonwealth*, 298 Va. 392, 397 n.6 (2020) (quoting *Clinchfield Coal Co. v. Reed*, 40 Va. App. 69, 73 (2003)).

---

[4] We deny without prejudice Jennings's request that this panel "submit[] this matter for en banc review on its own motion." (Emphasis omitted). Jennings has the right to request such a hearing following the decision of this panel. *See* Code § 17.1-402(D).

- 4 -

CONCLUSION

Pursuant to this Court's binding precedent, the trial court did not err in imposing a

mandatory minimum sentence.  Accordingly, we affirm the trial court's judgment.

*Affirmed.*

Lorish, J., with whom Ortiz, J., joins, concurring.

I agree that the interpanel-accord doctrine requires this panel to follow our Court's prior decision in *Carter v. Commonwealth*, 38 Va. App. 116 (2002), and that *Carter* conclusively resolves this case. I write separately because I agree with Jennings that *Carter* was wrongly reasoned and that this Court should reconsider *Carter* en banc.

The issue Jennings raises is one of statutory interpretation. "As always, when interpreting a statute, 'our primary objective is to "ascertain and give effect to legislative intent," as expressed by the language used in the statute.'" *Morris v. Commonwealth*, 77 Va. App. 510, 517 (2023) (en banc) (quoting *Cuccinelli v. Rector & Visitors of the Univ. of Va.*, 283 Va. 420, 425 (2012)). "[W]e must assume that 'the legislature chose, with care, the words it used when it enacted the relevant statute, and we are bound by those words as we interpret the statute.'" *City of Virginia Beach v. ESG Enters., Inc.*, 243 Va. 149, 153 (1992) (quoting *Barr v. Town & Country Props., Inc.*, 240 Va. 292, 295 (1990)). We must "giv[e] to every word and every part of the statute, if possible, its due effect and meaning." *Epps v. Commonwealth*, 47 Va. App. 687, 714 (2006) (en banc) (quoting *Posey v. Commonwealth*, 123 Va. 551, 553 (1918)). In so doing, we should interpret words in a statute "if possible, to avoid rendering [other] words superfluous." *Cook v. Commonwealth*, 268 Va. 111, 114 (2004).

Our decision in *Carter* ignores these fundamental principles by interpreting "previously convicted of any other felony" to mean the same thing as "was adjudicated delinquent as a juvenile." The legislature chose to use two different phrases within the same paragraph, and we must assume they did so for a reason. *See Sauder v. Ferguson*, 289 Va. 449, 457-58 (2015) ("When the General Assembly uses two different terms in the same act, it is presumed to mean two different things." (quoting *Forst v. Rockingham Poultry Mktg. Coop.*, 222 Va. 270, 278

- 6 -

(1981))). That the legislature intended two different meanings by these two different phrases is even more apparent in light of the legislative history of this statute.

Before it was amended in 1999, Code § 18.2-308.2(A) contained no mandatory minimum sentencing provisions. It simply read:

> It shall be unlawful for (i) any person who has been convicted of a felony or (ii) any person under the age of twenty-nine who was found guilty as a juvenile fourteen years of age or older at the time of the offense of a delinquent act which would be a felony if committed by an adult, whether such conviction or adjudication occurred under the laws of this Commonwealth, or any other state, the District of Columbia, the United States or any territory thereof, to knowingly and intentionally possess or transport any firearm or to knowingly and intentionally carry about his person, hidden from common observation, any weapon described in § 18.2-308. A violation of this section shall be punishable as a Class 6 felony.

The amendment in 1999 added mandatory minimum penalties that apply in certain cases. A person who violates the statute after being "previously convicted of a violent felony as defined in § 17.1-805" is subject to a five-year mandatory minimum sentence. This sentencing provision applies regardless of when the prior violent felony conviction took place. In contrast, any person who violates the statute after being "previously convicted of any other felony within the prior 10 years" is subject to a two-year mandatory minimum sentence.[5] In adding these provisions, which specifically apply to those with prior felony convictions, we must assume the legislature chose its words carefully and did not apply mandatory sentencing provisions to juveniles adjudicated of delinquent acts that would have been felonies if committed as an adult.

Our decision in *Carter* ignores the distinction in statutory language in favor of honoring what it perceives to be a general legislative intention to "prevent[] a person, who is known to have committed a serious crime in the past, from becoming dangerously armed, regardless of

---

[5] While the statute has been amended since 1999, the quoted penalty language remains the same.

whether that person uses, displays, or conceals the firearm." 38 Va. App. at 124 (alteration in original) (quoting *Thomas v. Commonwealth*, 37 Va. App. 748, 754 (2002)). Armed with this intention, *Carter* inflates the significance of the phrase "any person" in the statute as "clearly embrac[ing] anyone found in violation of the prohibition," *id.* at 125, while ignoring that "any person" modifies the phrase "previously convicted of any other felony."

The default rule instituted by the General Assembly is that juvenile adjudications do not "impose any of the civil disabilities ordinarily imposed by conviction for a crime." Code § 16.1-308. This is because "juvenile proceedings are corrective in nature rather than penal. . . . The primary function of the juvenile courts properly considered is not conviction or punishment for crime; but crime prevention and juvenile rehabilitation." *Kiracofe v. Commonwealth*, 198 Va. 833, 844 (1957). That elsewhere in the Code the General Assembly specifically stated that juvenile adjudications should be considered synonymous with felony convictions is the exception to this general principle, and not a reason to think the General Assembly intended the same result by implication alone in Code § 18.2-308.2(A). *See, e.g.*, Code §§ 17.1-805(B), 19.2-295.1.

For this reason, *Carter*'s suggestion that its interpretation is necessary to harmonize its treatment of juvenile adjudications with Code § 17.1-805's treatment of juvenile adjudications, 38 Va. App. at 125-26, is unpersuasive. Code § 17.1-805(A) directs the Sentencing Commission to adopt "discretionary felony sentencing guidelines" based on "computing the actual time-served distribution for similarly situated offenders, in terms of their conviction offense and prior criminal history." That statute includes directives on how the Commission should determine sentencing guideline midpoints for certain violent offenses, which must be enhanced if the offender "has previously been convicted of a violent felony offense." Code § 17.1-805. Within the limited context of repeat violent offenses, the General Assembly specified that

"previous convictions shall include prior adult convictions and juvenile convictions and adjudications of delinquency based on an offense which would have been at the time of conviction a felony if committed by an adult . . . ." Code § 17.2-805(B).

That the legislature specifically detailed the circumstances where prior juvenile adjudications should be treated as synonymous with adult felony convictions in other statutes[6] does not suggest that the legislature broadly intended to equate the two. In fact, in light of the general rule that juvenile adjudications are different, it suggests just the opposite. *See Conkling v. Commonwealth*, 45 Va. App. 518, 523-24 (2005) ("That an adjudication is treated as a conviction in specific circumstances implies that it is not so treated as a general rule.").

The Commonwealth defends the interpretation in *Carter* in part[7] by suggesting that we should infer that "the construction given to the statute is presumed to be sanctioned by the legislature" and that it is now "obligatory upon the courts," *Vansant & Gusler, Inc. v.*

---

[6] The other statute *Carter* points to is Code § 19.2-295.1, which merely requires the Commonwealth to present to a sentencing court "the defendant's prior criminal history, including prior convictions and the punishments imposed . . . including adult convictions and juvenile convictions and adjudications of delinquency." That the legislature wanted a sentencing court to know a defendant's full criminal history again does not suggest that the legislature wanted to impose mandatory minimum sentences for past juvenile adjudications, without expressly saying so.

[7] The Commonwealth also argues that Jennings conceded that his prior juvenile adjudication was a "conviction" by not objecting below when the prior adjudication was referred to as a "conviction." But the operative question in applying the mandatory sentencing provision in Code § 18.2-308.2(A) is not whether a person has a prior "conviction" or "adjudication" but whether someone has been "previously convicted of any other *felony*." Code § 18.2-308.2(A) (emphasis added). Jennings never conceded that he was convicted of a felony rather than a "delinquent act which would be a felony if committed by an adult." Jennings was 17-and-a-half at the time of the underlying offense. Code § 16.1-278.8 sets out the options a juvenile court has upon finding a juvenile delinquent. Because Jennings was 19 at the time of the final disposition, the juvenile and domestic relations judge had, and exercised, the option under Code § 16.1-278.8(15) to impose a penalty under Code § 16.1-284, which governs dispositions where an adult is sentenced for a juvenile offense.

*Washington*, 245 Va. 356, 361 (1993), because the legislature has not acted in the intervening years to alter the same. This notion is known as the legislative-acquiescence presumption.

As our Supreme Court has recognized, "[e]ven when properly applied" the "[legislative-acquiescence] presumption is weak." *Jones v. Phillips*, 299 Va. 285, 301 (2020). Indeed, it is "at best treacherous to find in congressional silence alone the adoption of a controlling rule of law." *United States v. Wells*, 519 U.S. 482, 496 (1997) (quoting *NLRB v. Plasterers'*, 404 U.S. 116, 129-30 (1971)). As a result, neither this Court, nor the Supreme Court, have applied this presumption where a prior statutory interpretation decision conflicts with the plain text of a statute. To do so would offend the basic notion that we apply the text as written and not by plucking legislative intent from a cloud of inferences about what the General Assembly might have later agreed with.

There are other competing presumptions and rules here that ultimately diminish any persuasive value the legislative-acquiescence presumption may otherwise hold. First, we presume that criminal sentencing requires vast discretion from trial judges. *Minh Duy Du v. Commonwealth*, 292 Va. 555, 563 (2016). Indeed, absent a claim of procedural unreasonableness based on "an alleged statutory or constitutional violation," a "trial court 'has a range of choice, and its decision will not be disturbed as long as it stays within that range and is not influenced by any mistake of law.'" *Id.* at 563-64 (quoting *Lawlor v. Commonwealth*, 285 Va. 187, 212-13 (2013)). Given the strong presumption that a trial court is "best able to discern where the equities lie," *Sauder*, 289 Va. at 459 (quoting *Hamad v. Hamad*, 61 Va. App. 593, 607 (2013)), we must narrowly construe statutes that require a trial judge to give up that discretion and impose a mandatory minimum sentence. Second, the rule of lenity requires us to resolve any statutory ambiguity in favor of the accused. *Blake v. Commonwealth*, 288 Va. 375, 386 (2014).

Given that the statute at issue here is, at best, ambiguous, the rule of lenity similarly mandates a narrowing construction.

For these reasons, our Court should revisit *Carter* en banc.